# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| DANIEL SCOTT, | |
| Plaintiff, | No. C11-4055-DEO |
| vs. | **REPORT AND RECOMMENDATION** |
| MARY BENSON, ET AL., | |
| Defendants. | |

This matter is before the court on the plaintiff's motion for preliminary injunction (Doc. No. 20) and supporting brief (Doc. No. 31). The defendants filed a resistance. Doc. No. 26. On March 19, 2012, the undersigned held a telephonic hearing on the motion. The plaintiff appeared with his attorney, Patrick Parry. The defendants Mary Benson, ARNP, and Dr. Jason Smith appeared with their attorney, Assistant Attorney General Gretchen Kraemer. This matter is now fully submitted, and the undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.d.

*Background*

The plaintiff is a detainee at the Civil Commitment Unit for Sex Offenders ("CCUSO"). The defendant Mary Benson is an advanced registered nurse practitioner who treats the plaintiff. Doc. No. 26-2 ¶ 3. According to Ms. Benson, the plaintiff "has diabetes and will not adhere to a recommended dietary or self-care regimen. Because of his poor management of his diabetes, he is more prone to infections." *Id.* ¶ 6. In September 2010, the plaintiff suffered a heart attack due to three blocked arteries, which

precluded surgical intervention. The plaintiff, however, refused recommended medications. *Id.* ¶ 9.

The plaintiff was admitted to the hospital in October 2010. *Id.* ¶ 10. After the plaintiff's discharge almost month later, a nutritional assessment by the hospital recommended a special low-sodium and low-potassium diet of 2,200 calories. *Id.* In December 2010, the plaintiff was admitted to the hospital for kidney failure; upon his discharge, a low-sodium and low-potassium diet again was recommended. *Id.* ¶ 11. The plaintiff refused to see specialists in Iowa City from January to June 2011. *Id.* ¶ 13.

On June 13, 2011, the plaintiff signed a written form indicating his refusal to participate in recommended health care procedures including (1) "[a]ll medical recommended diets placed on [him] by Mary Benson ARNP"; (2) "[a]ll medical recommended diets placed upon [him] by the University of Iowa Hospitals and Clinics, or by any and all medical staff thereof"; and (3) "[a]ll medical recommended Commissary Restrictions, placed upon [him] by Mary Benson ARNP." Doc. No. 26-4.

In his affidavit dated January 25, 2012, the plaintiff states the following: "I was awarded Phase 3 of the program, in December 2011. With the advancement of Phase 3, patients are allowed incentive privileges, Hy-Vee Chicken, once per month or Pizza Hut Pizza once per month, and McDonald orders twice a month." Doc. No. 20-1 at 3. According to the plaintiff, Ms. Benson has prevented him from enjoying these incentives, explaining that

> [s]ince October 2010, Mary Benson has restricted me from spending my own U.S. currency of free will. For she has forced me on a diet for the past year and three months, and would not allow me to receive certain foods sent in by my family at Christmas times[.] [O]n December 15, 2010 I was sent in a Christmas package by Roberta J. Turner, (my mother), and Mary Benson ordered the property officer PSS Pingle to confiscate all foods from the package, and he issued me [an] unsigned copy of foods taken, and it says

that all of it was sent to MHI Dietary Staff for review, and the dietician said these foods were not allowed per the Diet that Mary Benson ARNP, put me on and is forcing me to eat.

Doc. No. 20-1 at 1.

According to Ms. Benson, however,

CCUSO maintained Mr. Scott on the special diet ordered by the physicians in Iowa City since December 2010. At all times, Mr. Scott has been provided a nutritionally adequate diet. Mr. Scott's blood sugars became normal and his A1C adjusted to the level that he no longer has diabetes. Laboratory results for his kidney failure remain in normal limits. He does not require dialysis. He has had no further heart issues. Mr. Scott required no hospitalization in 2011. Mr. Scott continues to refuse all medication except medication for pain and sleep. I believe these positive results are attributable directly to the diet.

Doc. No. 26-2 ¶ 12.

In his request for a preliminary injunction, the plaintiff maintains as follows:

1. The Defendants have prohibited Plaintiff from purchasing or keeping any non-CCUSO provided food supplies including: food from outside vendors; food sent by family members and commissary items. . . . All of these food items may be obtained and kept by all other CCUSO patients.

2. The Plaintiff believes that the Defendants will assert that the restrictions have been imposed due to health conditions. However, Plaintiff asserts that some of the prohibited items, including vegetables, are not contraindicated by the Plaintiff's health conditions.

3. The Plaintiff asserts that these food restrictions are retaliation for his request not to pursue additional medical treatment.

4. The Plaintiff will suffer irreparable injury to his health if these food restrictions continue as he is unable to meet his basic nutritional needs without supplemental food items.

3

"The Plaintiff asserts that he requires additional calories beyond the meals provided by the CCUSO and that he will continue to suffer weight loss and other health problems if he cannot receive outside food items." Doc. No. 31 at 2. "The Plaintiff asserts that he understands the risks to his own health by consuming food that may not be ideal for him and assumes the risk of eating outside food." *Id.* According to the plaintiff, "[a]ssuming that [he] can establish weight loss or other health problems caused by excluding outside food, [he] can establish a reasonable probability of success on the merits." *Id.* Furthermore, the plaintiff asserts that "the public's interest is best served by ensuring that [he] is able to receive the same privileges and treatment accorded to all other individuals in the CCUSO to ensure consistent policy and to avoid further § 1983 claims." *Id.* The plaintiff finally maintains that he

> possesses a significant liberty interest in avoiding the unwanted administration of a forced diet under the Due Process Clause of the Fourteenth Amendment. [He] has a protected liberty interest here in refusing a forced medical diet where he is competent and assumes the risk of a less nutritious diet. That liberty interest requires a preliminary injunction to protect [his] ability to refuse the CCUSO's nutritional plan upon him.

*Id.* at 2-3 (citations omitted). The plaintiff thus seeks a preliminary injunction "that restricts the Defendants from placing any limitations on food beyond the standard CCUSO rules." Doc. No. 20 at 2. In particular, the plaintiff seeks to enjoin the defendants from "restricting [him] from buying food from outside vendors, and the CCUSO Commissary." Doc. No. 20-1 at 1.

At the hearing, the plaintiff testified that his status at the CCUSO is Phase Three and Level Four. All detainees at CCUSO are able to obtain fruits and vegetables once a week. As they progress through the stages, additional food items are added as privileges. For example, the detainees can purchase chicken or pizza once a month, food from

4

Subway once a month, and food from McDonalds twice a month. Unlike other Phase Three detainees, the plaintiff is not allowed to obtain these foods, other than fruits, vegetables, Subway food, unsalted popcorn, and ribs during Black History Month. Because of his restricted diet, the plaintiff is no longer diabetic.

The plaintiff believed that the Constitution does not permit the defendants to restrict what food he may purchase or obtain from outside sources. He claimed that his weight loss is taking a toll on his body, although he conceded that his prescribed diet is not medically harming him, "but lots of times I don't get a lot on my tray." According to the plaintiff, his diet is causing him irreparable harm because it is hindering his progress through the treatment program at the CCUSO.

The plaintiff testified that he currently weighs 228 pounds and stands five feet and eleven inches tall. Ms. Benson testified that the plaintiff's weight previously was 291 pounds in 2008, 304 pounds in 2009, 298 pounds in September 2010, and 234 pounds in October 2011. His ideal weight is 145 pounds, taking into account the fact that both of his legs have been amputated below the knee. Ms. Benson also testified that, if the plaintiff were to return to his previous eating habits, his diabetes would return.

*Discussion*

*Legal Standard*

This court recently reviewed the following applicable standard in determining whether to issue a preliminary injunction. *Sak v. City of Aurelia, Iowa*, No. C11-4111-MWB, ___ F. Supp. 2d ___, 2011 WL 6826146, at *7-18 (N.D. Iowa Dec. 28, 2011); *Syngenta Seeds, Inc. v. Bunge N. Am., Inc.*, ___ F. Supp. 2d ___, No. C11-4074-MWB, 2011 WL 4478510, at *11-36 (N.D. Iowa Sept. 26, 2011). "A preliminary injunction is

an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)).

> In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co.*[*v. Gambell*], 480 U.S. [531,] 542, 107 S. Ct. 1396, 94 L.Ed.2d 542 [(1987)]. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." [*Weinberger v.*] *Romero–Barcelo*, 456 U.S. [305,] 312, 102 S. Ct. 1798, ____ [(1982)]; *see also Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500, 61 S. Ct. 643, 85 L.Ed. 971 (1941).

*Id.* at 24.

> The Eighth Circuit Court of Appeals has since explained:
>
> When evaluating whether to issue a preliminary injunction, a district court should consider four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant. We review the denial of a preliminary injunction for abuse of discretion. An abuse of discretion may occur when the district court rests its decision on clearly erroneous factual findings or erroneous legal conclusions.

*Roudachevski v. All-American Care Ctrs., Inc.*, 648 F.3d 701, 705-06 (8th Cir. 2011) (some citations omitted). The "*Dataphase* factors" are consistent with the factors relevant to success on a motion for preliminary injunction articulated by the Supreme Court in *Winter*. *See Sierra Club v. United States Army Corps of Eng'rs*, 645 F.3d 978, 989 (8th Cir. 2011). More specifically, "[a] plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips

in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The relevant factors must be balanced: Specifically, the Court clarified in *Winter* that, where the defendant's interests and the public interest outweighed the movant's interests, as demonstrated by the movant's showing of irreparable harm, it was unnecessary to consider whether the plaintiff had established a sufficient likelihood of success on the merits. *See id.* at 23–24; *Sierra Club*, 645 F.3d at 992-93.

"'The primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full effective relief.'" *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir. 1993) (quoting *Rathmann Group v. Tanenbaum*, 889 F.2d 787, 789-90 (8th Cir.1989), in turn quoting *Ferry–Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984)). Thus, the court observed that "[r]equiring [the defendant] to take affirmative action . . . before the issue has been decided on the merits goes beyond the purpose of a *preliminary* injunction." *Id.*. The court explained that, where a movant seeks on its motion for preliminary injunction substantially the same relief it would obtain after a trial on the merits, the movant's burden is particularly "heavy." *Id.* (citing *Dakota Indus., Inc. v. Ever Best Ltd.*, 944 F.2d 438, 440 (8th Cir. 1991)).

The court considers each of the pertinent *Dataphase/Winter* factors in turn, beginning with "likelihood of success on the merits."

*Likelihood of Success on the Merits*

"Success on the merits has been referred to as the most important of the four factors." *Roudachevski*, 648 F.3d at 706. In *Winter*, the Court noted that, as to the "likelihood of success" factor, "the standard for preliminary injunctive relief requires a showing of a 'likelihood of success on the merits rather than actual success' as necessary

for permanent relief." *Sierra Club*, 645 F.3d at 993 (quoting *Winter*, 555 U.S. at 32, in turn quoting *Amoco Prod. Co.*, 480 U.S. at 546 n.12). The Eighth Circuit Court of Appeals has noted that this "preferred wording" of the standard for success differs somewhat from the "once familiar" formulation in *Dataphase* requiring the plaintiff to show that, "at the very least," the plaintiff had "established a fair ground for litigation." *Id*. The question is not, however, whether the district court uses the preferred wording, but whether, in light of the evidence, the district court correctly concludes that the plaintiff is likely to succeed on at least some of its claims. *Id*. at 993-94.

Although the CCUSO is not a prison, because the plaintiff "has been civilly committed to state custody as a dangerous person, his liberty interests are considerably less than those held by members of free society." *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006). "Although an involuntarily committed patient of a state hospital is not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner," even though the Eighth Amendment does not apply. *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004). "One constitutional protection retained by the prisoner is the right to an adequate diet. Because control of the administrative details of a prison remains exclusively in the hands of prison officials, control of the diet is within their discretion, assuming it is adequate." *Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990) (per curiam) (citations omitted). The plaintiff has the burden to show that his diet is not sufficient to maintain his health. *See Divers v. Dep't of Corr.*, 921 F.2d 191, 194 (8th Cir. 1990) (per curiam) (citing *Campbell v. Cauthron*, 623 F.2d 503, 508 (8th Cir. 1980)). Furthermore, the Eighth Circuit recognizes no constitutional right of access to a prison gift or snack shop. *See Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996). Accordingly, the plaintiff has not shown that he is likely to succeed on the merits because he has not shown that his prescribed diet is insufficient to maintain his health.

*Irreparable Harm to the Plaintiff*

"Likelihood of success" is "'meaningless in isolation . . . [and] must be examined in the context of the relative injuries to the parties and the public.'" *Roudachevski*, 648 F.3d at 706 (quoting *Gen. Motors Corp. v. Harry Brown's L.L.C.*, 563 F.3d 312, 319 (8th Cir. 2009)); *accord Winter*, 555 U.S. at 23–24 (there is no need to reach the "likelihood of success" factor, if the balance of interests weighs against the injunction). The court must still consider and balance the other *Dataphase*/*Winter* factors to decide whether to issue a preliminary injunction. Therefore, the court examines the plaintiff's allegations of "irreparable harm." *See Winter*, 555 U.S. at 20; *Roudachevski*, 648 F.3d at 705 (citing *Dataphase*, 640 F.2d at 114).

The movant must show that "he is likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. In *Winter*, the Supreme Court clarified that, even where a plaintiff demonstrates a strong likelihood of prevailing on the merits, the plaintiff must do more than show a "possibility" of irreparable harm; rather, the proper standard "requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22 (rejecting as "too lenient" the "possibility" of irreparable harm standard used by the Ninth Circuit Court of Appeals and the district court in the case below). "'Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages.'" *Rogers Group, Inc. v. City of Fayetteville, Ark.*, 629 F.3d 784, 789 (8th Cir. 2010) (quoting *Gen. Motors Corp. v. Harry Brown's*, L.L.C., 563 F.3d 312, 319 (8th Cir. 2009)). "To succeed in demonstrating a threat of irreparable harm, 'a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" *Roudachevski*, 648 F.3d at 706 (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996)).

Here, the plaintiff conceded that his diet is not medically harming him, other than the fact that he is not able to obtain the quantity or types of food that he would like. *Cf. Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) ("Only in the rare situation when the state action is 'truly egregious and extraordinary' will a substantive due process claim arise."). Thus, the plaintiff has failed to demonstrate that irreparable harm is likely absent an injunction.

*Balance of Equities*

The next *Dataphase*/*Winter* factor is whether the balance of equities tips in favor of preliminary injunctive relief. *Winter*, 555 U.S. at 20; *Roudachevski*, 648 F.3d at 705-06 (stating the *Dataphase* factor as "the state of the balance between [the movant's irreparable] harm and the injury that granting the injunction will inflict on other parties" (citing *Dataphase*, 640 F.2d at 114)). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* at 24 (quoting *Amoco Prod. Co.*, 480 U.S. at 542).

When balancing the cost that CCUSO bears in providing the plaintiff's medical cares against the lack of medical harm suffered by the plaintiff from his prescribed dietary restrictions, the court finds that the balance of equities tips against preliminary injunctive relief. *See Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982) (considering proper balance between legitimate state interests and rights of involuntarily committed to reasonable conditions of safety and freedom from unreasonable restraints).

*The Public Interest*

The last *Dataphase*/*Winter* factor requires the court to consider whether an injunction is in the public interest. *Winter*, 555 U.S. at 20; *Roudachevski*, 648 F.3d at

705–06. The court must consider both what public interests might be injured and what public interests might be served by granting or denying a preliminary injunction. *See Sierra Club*, 645 F.3d at 997-98. "[T]he determination of where the public interest lies is also dependent on the determination of likelihood of success on the merits," because it is in the public interest to protect rights. *Phelps-Roger v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008) (First Amendment rights case).

As noted above, safety and security concerns applicable to prisoners also apply to the involuntarily committed. "Prison regulations may infringe upon prisoners' constitutional rights so long as such regulations are reasonably related to legitimate penological interests." *Goff v. Graves*, 362 F.3d 543, 548-49 (8th Cir. 2004). "[P]reservation of prisoners' health is certainly a legitimate objective, and prison officials may take reasonable steps to accomplish this goal." *Garza v. Carlson*, 877 F.2d 14, 17 (8th Cir. 1989). Furthermore, prisoners have the right to be provided with food sufficient to sustain them in good health. *Kind v. Frank*, 329 F.3d 979, 981 (8th Cir. 2003). "[C]laims of inadequate medical treatment which reflect a mere disagreement with prison authorities over proper medical treatment do not state a claim of constitutional magnitude." *Massey v. Hutto*, 545 F.2d 45, 46 (8th Cir. 1976) (per curiam). Accordingly, the public interest in ensuring the health of detainees such as the plaintiff weighs against preliminary injunctive relief in this case. *See also Romeo*, 457 U.S. at 322-23 ("[C]ourts must show deference to the judgment exercised by a qualified professional. By so limiting judicial review of challenges to conditions in state institutions, interference by the federal judiciary with the internal operations of these institutions should be minimized. Moreover, there certainly is no reason to think judges or juries are better qualified than appropriate professionals in making such decisions." (footnote omitted)).

In sum, the *Dataphase*/*Winter* factors outlined above weigh against issuing a preliminary injunction in this case. It is thus recommended that the plaintiff's motion for preliminary injunction be **denied**.

*Recommendation*

For the reasons stated above, IT IS RESPECTFULLY RECOMMENDED that the plaintiff's application for a preliminary injunction (Doc. No. 20) be **denied**.

Objections to the Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 21st day of March, 2012.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT