IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

DANIEL J. SCOTT,

      Plaintiff,

vs.

MARY BENSON,

      Defendant.

No. 11-CV-4055-DEO

ORDER

_____

## I. INTRODUCTION

Presently before the Court is the Defendant's Motion for Summary Judgment of the 42 U.S.C. Section 1983 Complaint filed by Mr. Scott. Mr. Scott is a patient committed to the the Iowa Civil Commitment Unit for Sex Offenders (CCUSO)[1] in Cherokee, Iowa. Defendant Mary Benson is a nurse at CCUSO.

## II. PROCEDURAL HISTORY AND FACTS

### A. Procedural History

Mr. Scott filed a Complaint against Mary Benson, Jason Smith and CCUSO on June 14, 2011, alleging that the medical staff at CCUSO had caused him to suffer a severe infection.

---

[1] The patients at CCUSO "have served their prison terms but in a separate civil trial have been found likely to commit further violent sexual offenses." Iowa Department of Human Services Offer #401-HHS-014: CCUSO, http://www.dhs.state.ia.us/docs/11w-401-HHS-014-CCUSO.pdf, last visited May 9, 2014.

Docket No. 2, Att. 1. On August 5, 2011, the Court entered an Initial Review Order allowing Mr. Scott's case to proceed (Complaint filed at Docket No. 11) and appointing attorney Pat Parry to represent him. Docket No. 10. On February 23, 2012, the Defendants filed a Motion to Dismiss. Docket No. 24. Meanwhile, on March 19, 2012, Magistrate Judge Paul Zoss conducted a hearing on an unrelated preliminary injunction Mr. Scott requested regarding his access to food at CCUSO. Judge Zoss issued a report recommending that the preliminary injunction be denied. Docket No. 33. On April 16, 2012, the Defendants filed a Motion for Summary Judgment on Mr. Scott's primary Complaint. On April 30, 2012, this Court accepted Judge Zoss' Report and Recommendation and denied Mr. Scott's request for broader access to certain foods at CCUSO. Docket No. 36. On June 11, 2012, the Court held a combined hearing on Defendants' Motion to Dismiss and Motion for Summary Judgment. Docket No. 46.

On September 28, 2012, this Court entered an Order granting in part and denying in part the Defendant's Motion for Summary Judgment and Motion to Dismiss. Docket No. 48. Specifically, the Court granted the Defendants' Motion to

Dismiss Defendants CCUSO and Jason Smith. The Court also granted the Defendants' Motion to Dismiss monetary claims against Ms. Benson in her official capacity. However, the Court denied the Defendants' Motion for Summary Judgment related to Mr. Scott's medical claim and the Defendants' request for qualified immunity. Shortly thereafter, the remaining Defendant, Ms. Benson, appealed the Court's Order denying her qualified immunity. Docket No. 50.

While the appeal was pending, both Mr. Scott and the Defendant filed various emergency motions regarding Mr. Scott's ongoing medical care. See, for example, Docket No.'s 58 and 74. Those matters were materially different than those contained in Mr. Scott's Complaint. (In his Complaint, Mr. Scott argued that CCUSO refused him adequate medical care, while the subsequent emergency motions dealt with CCUSO's desire to treat Mr. Scott's medical situation more aggressively.) Accordingly, the Court ordered that the new issues proceed as a separate case. Docket No. 64. Mr. Scott's other case is 13-CV-4028-DEO.

On February 5, 2014, the 8th Circuit Court of Appeals entered an Order vacating this Court's denial of summary

judgment on qualified immunity grounds.  The 8th Circuit found that his Court had used the wrong standard regarding Mr. Scott's medical claim.  The 8th Circuit stated:

> [b]oth parties argued to the district court that the deliberate indifference standard from the Eighth Amendment should govern Scott's Fourteenth Amendment claim. Relying on a non-binding case, <u>McDonald v. Eilers</u>, Civ. No. 88-2751, 1988 WL 131360, at *2 (E.D. Pa. Dec. 7, 1988), the district court instead analyzed Scott's claim under the professional judgment standard from <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982).

<u>Scott v. Benson</u>, 742 F.3d 335, 339 (8th Cir. 2014).  Docket No. 76.  The 8th Circuit went onto say:

> where a patient's Fourteenth Amendment claim is for constitutionally deficient medical care, we apply the deliberate indifference standard from the Eighth Amendment.  <u>Senty-Haugen v. Goodno</u>, 462 F.3d 876, 889-90 (8th Cir. 2006). Accordingly, the district court should have applied the deliberate indifference standard to Scott's claim.

<u>Scott</u>, 742 F.3d at 339.

Based on the 8th Circuit's ruling, the Court requested that the parties file supplemental briefs, which they have now done.  See Docket No.'s 79 and 84.

4

**B. Facts**

As the 8th Circuit stated, "[t]he relevant facts, almost all of which are disputed, occurred in August and September 2010." <u>Scott</u>, 742 F.3d at 337.

Mr. Scott alleges that on August 2, 2010, he first presented to Ms. Benson to complain of a an infected lump within his thigh. Docket No. 37, Att. 3, p. 1. Mr. Scott claims that Ms. Benson looked at his thigh and denied his request for antibiotics. <u>Id.</u> Ms. Benson contends that, though she saw Mr. Scott on August 2, 2010, he did not complain of an infected lump within his thigh. Docket No. 38, Att. 1, p. 1.

Mr. Scott alleges that he returned to the medical clinic on August 10, 2010, but Ms. Benson refused to look at the infection on the backside of his thigh. Docket No. 37, Att. 3, p. 1. The Defendant denies she saw Mr. Scott on August 10.

The parties agree that on either August 16 or 17, 2010, Ms. Benson examined the affected infected area on Mr. Scott's thigh. Docket No. 37, Att. 3, p. 1 and Docket No. 45, p. 1. According to Mr. Scott, despite the fact that he could squeeze puss from the infected area, Ms. Benson refused to give him

antibiotics. Docket No. 37, Att. 3, 1. Defendant contends, and the medical records corroborate, that Plaintiff was seen on August 16, 2010, rather than August 17, 2010. Docket No. 38, Att. 1, p. 1. Based on the medical records, Ms. Benson states that Mr. Scott was prescribed an antibiotic, Cipro. Docket No. 38, Att. 1, p. 1 and Docket No. 34, Att. 1, p. 2.

Mr. Scott argues that on August 25, 2010, Ms. Benson again denied him antibiotics and screamed, "There's nothing wrong with you, all you are wanting is attention - stop it now." Docket No. 37, Att. 3, p. 2. Based on the medical records, Ms. Benson argues that Mr. Scott attended medical clinic on August 23. It seems that Ms. Benson observed four 'ulcers' and acknowledges that Mr. Scott periodically had a slight fever. Docket No. 34, Att 1, p. 2-3. The medical records suggest that Mr. Scott was seen again on August 27, 2010. Ms Benson argues that on that date, she prescribed the antibiotic Augmentin to treat a "pinpoint hole that exuded thick purulent drainage." Docket No. 34, Att. 1, p. 3.

Both parties agree that an incident report, dated September 1, 2010, indicates Plaintiff requested CCUSO staff view his infected area. Docket No. 34, Att. 1, p. 3 and

6

Docket No. 37, Att. 2, p. 3. Staff notes indicate "some swelling and purplish coloring to the alleged infected area," as well as "what seemed to be a sore" without drainage. Docket No. 34, Att. 1, p. 3. Mr. Scott was seen again on September 2, 2010, but no abnormalities were noted. Docket No. 34, Att. 1, p. 3.

Mr. Scott alleges that on September 4, 2010, Defendant again refused to look at his infection or to prescribe antibiotics. Docket No. 37, Att. 3, p. 2. Ms. Benson argues that September 4, 2010, was a Saturday, and she was not on duty. Docket No. 38, Att. 1, p. 2. Medical records indicate CCUSO staff contacted Ms. Benson at home at 3:00 a.m., and she called in to monitor the situation throughout the morning. Docket No. 35, p. 39. Plaintiff was repeatedly gagging and placed on bed rest an a liquid diet. Docket No. 35, p. 39.

Both parties agree that on September 7, 2010, Ms. Benson noted a 13 by 6 centimeter necrotic (dead) area on Mr. Scott's scrotum; and, after consult with Dr. Veit, the medical director at CCUSO, Mr. Scott was sent to the local hospital. Docket Nos. 34, Att 1, p. 3-4 and Docket No. 37, Att. 2, p. 3. Mr. Scott was then transferred to the University of Iowa

Hospitals and Clinics where portions of his infection were surgically removed. Docket No. 34, Att. 1, p. 4. Mr. Scott states that people at the University of Iowa told him it "was the worst case of gangrene they had ever seen," and it "must have set in one and a half to two weeks before treatment from the hospital." Docket No. 37, Att. 3, p. 2.

While at the University of Iowa Hospitals and Clinics, Plaintiff suffered a heart attack. Docket No. 34, Att. 1, p. 4. The parties dispute the cause of the heart attack. Mr. Scott contends it was caused by the stress of the infection and surgery, while the Defendant cite Mr. Scott's alleged poor lifestyle choices.

Following his trip to Iowa City, Mr. Scott's infection did not heal adequately and his leg remained swollen. Docket No. 34, Att. 1, p. 4-5. Mr. Scott states that on October 16, 2010, he suffered from fluid loss, sepsis,[2] and kidney failure and was again transported to the local hospital and then to the University of Iowa Hospitals on October 18, 2010. Docket

_____

[2] "Sepsis is an illness in which the body has a severe response to bacteria or other germs." *Sepsis*, PubMed Health, available at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001687/, last visited May 9, 2014.

No. 37, Att. 3, p. 3.  Defendant maintains Plaintiff did not suffer from fluid loss.  Docket No. 38, Att. 1, p. 2.  There is no dispute University of Iowa Hospitals amputated Plaintiff's lower right leg on October 27, 2010.  Docket No. 37-3, 3.

A bulk of the Defendant's argument is that Mr. Scott has an extremely difficult personality and is non-compliant with medical rules and recommendations.  See Docket No. 34, Att. 1, generally.  That argument is a factual dispute regarding Mr. Scott's credibility and is not ripe of adjudication during a Motion for Summary Judgment.

## III.  MOTION FOR SUMMARY JUDGMENT STANDARD

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56(c). A fact is *material* if it is necessary "to establish the existence of an element essential to [a] party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). There is a *genuine issue* as to a material fact if, based on the record before the court, a "rational trier of fact" could find for the non-moving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

When considering a motion for summary judgment, a "court must view the evidence in the light most favorable to the nonmoving party . . . ." <u>Hutson v. McDonnell Douglas Corp.</u>, 63 F.3d 771 (8th Cir. 1995). This requires a court to draw any reasonable inference from the underlying facts in favor of the nonmoving party and to refrain from weighing the evidence, making credibility determinations, or attempting to discern the truth of any factual issue in a manner which favors the moving party unless there is no reasonable alternative. See

_Matsushita_, 475 U.S. at 587; and <u>Morris v. City of Chillicothe</u>, 512 F.3d 1013, 1018 (8th Cir. 2008) (citing <u>Thomas v. Corwin</u>, 483 F.3d 516, 526-27 (8th Cir. 2007).

Procedurally, the movant bears the initial burden "of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." <u>Hartnagel v. Norman</u>, 953 F.2d 394, 395 (8th Cir. 1992) (citing <u>Celotex</u>, 477 U.S. at 323).  Once the movant has carried his burden, the non-moving party is required "to go beyond the pleadings" and through "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" <u>Celotex</u>, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(e)).

**IV. ISSUES**

There are two issues before the Court:  (1) has the Plaintiff alleged a sufficient factual dispute such that his deliberate indifference claim should survive summary judgment; and (2) is Ms. Benson entitled to qualified immunity.

## V.  LAW AND ANALYSIS

### A.  Deliberate Indifference

The Defendant first argues that there is no genuine issue of material fact, because the Plaintiff has failed to allege any facts that would constitute deliberate indifference.  At the outset, the Court notes that, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg, 457 U.S. at 321-22.  In the context of inmate medical-care claims, Courts have stated that:

> [t]he Eighth Amendment's prohibition against cruel and unusual punishment, which embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency," prohibits punishments which are incompatible with "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  It thus requires that the government provide "medical care for those whom it is punishing by incarceration." Id. at 103.  The Eighth Amendment safeguards the prisoner against a lack of medical care that "may result in pain and suffering which no one suggests would serve any penological purpose." Id. Accordingly, "deliberate indifference to serious medical needs" of a prisoner constitutes the unnecessary and wanton

> infliction of pain forbidden by the
> Constitution. <u>Id.</u> at 104.

<u>Rodriquez v. Plymouth Ambulance Serv.</u>, 577 F.3d 816, 828 (7th Cir. 2009) (parallel citations omitted). This deliberate indifference standard is used routinely in prisoner cases related to medical care.

Courts have applied the deliberate indifference standard to civilly committed individuals. See <u>Senty-Haugen v. Goodno</u>, 462 F.3d 876, 889 (8th Cir. 2006) which applied the deliberate indifference standard to a medical-care claim raised by a patient involuntarily committed as a sexually violent predator under the 14th Amendment. In this case, the 8th Circuit affirmed that deliberate indifference is the appropriate standard, stating, "where a patient's Fourteenth Amendment claim is for constitutionally deficient medical care, we apply the deliberate indifference standard from the Eighth Amendment. <u>Senty-Haugen</u>, 462 F.3d at 889-90." <u>Scott</u>, 742 F.3d at 339.

Under the deliberate indifference standard, Mr. Scott must show the Defendant was deliberately indifferent to a serious illness or injury. <u>Senty-Haugen</u>, 462 F.3d at 889. A successful deliberate indifference claim is comprised of both

an objective and a subjective element. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). First, Mr. Scott must demonstrate that, objectively, the deprivation he suffered was "sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities." <u>Walker v. Benjamin</u>, 293 F.3d 1030, 1037 (7th Cir. 2002). In the medical care context, this objective element is satisfied when a plaintiff demonstrates that his medical need itself was sufficiently serious. <u>Gutierrez v. Peters</u>, 111 F.3d 1364, 1369 (7th Cir. 1997). Serious medical need is a medical need diagnosed as requiring treatment, or a medical need so obvious that even a lay person would recognize the need for a doctor's attention. <u>Camberos v. Branstad</u>, 73 F.3d 174, 176 (8th Cir. 1995). Second, Mr. Scott must establish that the defendants acted with a "'sufficiently culpable state of mind'" to support liability under § 1983. <u>Greeno v. Daley</u>, 414 F.3d 645, 653 (7th Cir. 2005).

To succeed on deliberate-indifference claim, a plaintiff must show more than negligence or gross negligence. <u>Jolly v. Knudsen</u>, 205 F.3d 1094, 1096 (8th Cir. 2000). Although negligence or inadvertence will not support a deliberate

indifference claim, a plaintiff need not establish that officials actually intended harm from the failure to provide adequate care. <u>Walker</u>, 293 F.3d at 1037. "[I]t is enough to show that the defendants knew of a substantial risk of harm to [the plaintiff] and disregarded the risk." <u>Greeno</u>, 414 F.3d at 653. A successful plaintiff need not show that he was literally ignored in his demands for medical treatment, and a defendant's showing that a plaintiff received some treatment does not resolve the issue conclusively if the treatment was "blatantly inappropriate." <u>Greeno</u>, 414 F.3d at 653-54 (internal citations and quotation omitted). Finally, the Eighth Amendment "protects [a plaintiff] not only from deliberate indifference to his or her current serious health problems, but also from deliberate indifference to conditions posing an unreasonable risk of serious damage to future health." <u>Board v. Farnham</u>, 394 F.3d 469, 479 (7th Cir. 2005). "Deliberate indifference must be measured by the official's knowledge at the time in question, not by 'hindsight's perfect vision.'" <u>Schaub v. VonWald</u>, 638 F.3d 905, 915 (8th Cir.

2011) (citing <u>Lenz v. Wade</u>, 490 F.3d 991, 993 n.1 (8th Cir. 2007)).

The Defendant's filings are replete with references to the alleged fact that Mr. Scott is extremely difficult to work with or have sympathy for. That may well be true. However, that issue is not ripe for disposition at the summary judgment stage. The Defendant argues or implies that Mr. Scott's serious medical situation is a result of his own belligerence. However, that same implication could lead the opposite conclusion; the fact that Mr. Scott has angered Ms. Benson and other CCUSO staff members is a possible motivation as to why Mr. Scott may have received deficient medical care. In either case, that is a fact intensive question that cannot be decided by summary judgment. Rather, the Court must weigh the actual allegations regarding the care Mr. Scott actually received and the medical condition he actually suffered.

As stated above, to show deliberate indifference, Mr. Scott must first demonstrate that, objectively, the deprivation he suffered was "sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities." <u>Walker</u>, 293 F.3d at 1037. In the

16

medical care context, this objective element is satisfied when a plaintiff demonstrates that his medical need itself was sufficiently serious. <u>Gutierrez</u>, 111 F.3d at 1369.

In this case, there is no real allegation that Mr. Scott's situation did constitute a serious medical need. Mr. Scott is a diabetic. He had suffered from serious, even life threatening infections in the past. The infected area that Mr. Scott began complaining about in August 2010 eventually required surgical intervention. As the situation progressed, Mr. Scott had a heart attack and eventually lost his leg. If Mr. Scott's situation was not "sufficiently serious," nothing short of death is.

Second, Mr. Scott must establish that the defendants acted with a "'sufficiently culpable state of mind'" to support liability under § 1983. <u>Greeno</u>, 414 F.3d at 653. This second element is the real question in this case. Mr. Scott alleges that he first told Ms. Benson about an infected lump on his thigh on August 2, 2010. Ms. Benson denies she looked at a lump at that time. Mr. Scott alleges that he again tried to seek treatment for the affected area on August 10, 2010. Mr. Scott argues that on August 16 or 17, 2010,

though he could squeeze puss out of the infected area, Ms. Benson refused to prescribe antibiotics. It is undisputed that Ms. Benson looked at Mr. Scott's affected area on August 17, 2010, and the records indicate she proscribed Cipro, an antibiotic. Mr. Scott argues that on August 25, 2010 (which may have been August 23), he tried to complain about his growing infection, but Ms. Benson yelled at him and dismissed his concern. Her records from August 23, 2010, indicate that he had four new ulcers. Then, on August 27, 2010, when Ms. Benson did look at Mr. Scott's leg, she found a lesion which was draining pus and prescribed a new medicine. On September 1 and 2, Ms. Benson found no problem with Mr. Scott. However, on September 4, she consulted with CCUSO by PHONE and determined that Mr. Scott should be on bed rest. Finally, on September 7, 2010, Mr. Scott was sent to the hospital. His infection was so severe that surgical intervention was required.

The Court is persuaded that Mr. Scott has alleged sufficient facts to show that the Defendant acted with a sufficiently culpable state of mind. There is one fact agreed to by the parties that is extremely important to make this

determination:  that by September 7, 2010, Mr. Scott had a sufficiently serious infection that it required surgery.  His medical situation was not fictitious or exaggerated.  It was real and very serious.  Moreover, his September 7, 2010, infection was generally in the same place that he had complained about on August 2, 2010.  Accordingly, Mr. Scott, at the very least, has created a fact issue of whether his infection was left unresolved by Ms. Benson for over a month. Additionally, it is undisputed that Ms. Benson knew of Mr. Scott's medical history and she knew of the dangers associated with diabetes and infections.  Moreover, it is clear that on September 1 and 2, CCUSO medical staff failed to note any issues with Mr. Scott's leg, even though, we know now that he was suffering from an increasingly severe infection.  On September 4, 2010, CCUSO reached out to Ms. Benson, who was home for the weekend, regarding Mr. Scott's deteriorating situation.  Even though Ms. Benson alleges that she had previously prescribed two medications for Mr. Scott's infection, she simply ordered bed rest without examining him or directing he be examined by another medical professional. Thus, it is clear from the record that, especially as pertains

to the first week of September 2010, Mr. Scott had an increasingly severe infection which he repeatedly sought treatment for, but Ms. Benson did nothing other than recommend bed rest. Accordingly, Mr. Scott has raised factual questions as to whether Ms. Benson acted with a sufficiently culpable state of mind and his deliberate indifference claim must survive summary judgment.

Additionally, in Ms. Benson's brief, she argues that many of Mr. Scott's allegations are directly contradicted by the medical record. The Court notes that medical records were more than likely created by Defendant, and it is for the fact finder, not the Court sitting on a Motion for Summary Judgment, to determine if the medical records are so credible that they are beyond the impact of all possible contrary evidence.

**B. Qualified Immunity**

Ms. Benson's real argument is that she is entitled to a defense of qualified immunity. As a government official, Ms. Benson argues that she is entitled to qualified immunity for the performance of discretionary functions. Davis v. Hall, 375 F.3d 703, 711 (8th Cir. 2004). Qualified immunity exists

"to protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government.'" <u>Anderson v. Creighton</u>, 483 U.S. 635, 646 (1987) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 817 (1982)).

To defeat the Defendant's claim of qualified immunity, the Plaintiff must show how Ms. Benson's individual conduct violated a "clearly established statutory or constitutional right of which a reasonable person would have known." <u>Id.</u> The Supreme Court has established a two step sequential evaluation process to resolve questions of qualified immunity.[3] <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). The "'threshold question'" is whether the facts, taken in a "'light most favorable to the party asserting the injury,'" demonstrate the defendant's "'conduct violated a constitutional right'" of the plaintiff. <u>Scott v. Harris</u>, 550 U.S. 372, 377 (2007). If there is a "violation of constitutional right, 'the next, sequential step is to ask

---

[3] More recently, in <u>Pearson v. Callahan</u>, the Supreme Court ruled that the sequential evaluation process outlined in <u>Saucier</u> was not mandatory; lower courts retain discretion whether to follow the <u>Saucier</u> procedure. 555 U.S. 223, 236 (2009).

whether the right was clearly established . . . in light of
the specific context of the case.'" Id.

The first question in the sequential evaluation process
is straight forward and merely asks if there is a
constitutional violation under prevailing law. The second
question in the sequential evaluation process requires that
the "contours of the right . . . be sufficiently clear" such
"that a reasonable official would understand that what he is
doing violates that right." Saucier, 533 U.S. at 202. "If
the law did not put the [official] on notice that his conduct
would be clearly unlawful," a motion to dismiss "based on
qualified immunity is appropriate." Id. While the first and
second steps are quite similar, the second step adds an
additional dimension in that "reasonable mistakes can be made
as to the legal constraints on particular" official conduct,
regardless of whether or not there was an actual
constitutional violation. Id., at 205.

The Iowa AG's office has previously conceded that
"treating patient's medical needs with deliberate indifference
is prohibited by the Constitution." See, for example, 12-CV-
4063-DEO, Docket No. 16, Att. 2, p. 6. Ms. Benson argues that

the facts of this case do not establish deliberate indifference. However, as stated above, the Court is persuaded that the there is a genuine issue of material fact related to Mr. Scott's deliberate indifference medical claim. In her brief, Ms. Benson argues:

> "[w]hen considering the issue of qualified immunity, however, the district court is to "view those facts in a light most favorable to the non-moving party as long as those facts are not so 'blatantly contradicted by the record ... that no reasonable jury could believe [them].'" <u>O'Neil v. City of Iowa City</u>, 496 F.3d 915, 917 (8th Cir. 2007) (quoting <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007)). Then the court should determine if those facts demonstrate a constitutional violation that is clearly established." <u>Handt v. Lynch</u>, 681 F.3d 939, 945 (8th Cir. 2012).

Docket No. 79, p. 5-6. As set out in the proceeding section, the Court has analyzed the specific facts in the light most favorable to Mr. Scott and determined that he has alleged sufficient facts to constitute a claim for deliberate indifference. It is beyond dispute that being deliberate indifferent to serious medical needs is a constitutional violation. Moreover, deliberate indifference is well defined such that Ms. Benson knew or should have known that being deliberately indifferent violated Mr. Scott's rights.

Accordingly, Ms. Benson is not entitled to qualified immunity.

**VII.  CONCLUSION**

For the reasons set out above, Ms. Benson's Motion for Summary Judgment, Docket No. 34, is **denied.**

**IT IS SO ORDERED** this 12th day of May, 2014.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa