# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

| | |
|---|---|
| **DANIEL J. SCOTT**, | |
| Plaintiff, | 13-CV-4028-DEO |
| | 11-CV-4055-DEO |
| vs. | ORDER |
| **MARY BENSON AND JASON SMITH**, | |
| Defendants. | |

_____

Before the Court are the Plaintiff's Motions to Continue the above captioned cases. See 11-CV-4055-DEO, Docket No. 97; and 13-CV-4028-DEO, Docket No. 71. The Defendant(s) resists both motions. See 11-CV-4055-DEO, Docket No. 98; and 13-CV-4028-DEO, Docket No. 72. (The arguments in both cases are largely the same.) After considering the parties' arguments, the Court now enters the following.

I. **BACKGROUND**

Mr. Scott is a patient at CCUSO, the Civil Commitment Unit for Sexual Offenders located in Cherokee, Iowa. An Iowa jury found that he has a mental abnormality associated with being a sexually violent predator. In re Det. of Scott, 742

N.W.2d 605 (Table) (Iowa Ct. App. 2007). Since his commitment to CCUSO, Mr. Scott has filed several suits before this Court. A partial history is set out below.

On August 5, 2011, this Court conducted an initial review of a Complaint filed by Mr. Scott in case 11-CV-4055-DEO. The Court appointed Mr. Scott an attorney and let his claim proceed on the following claims:

> (1) he is improperly required to follow certain dietary restrictions due to illness; (2) his electric wheelchair was improperly taken from him as a form of punishment; (3) his mail is being opened to confiscate contraband; (4) CCUSO has provided him insufficient handicap facilities; and (5) CCUSO has insufficient measures to prevent the spread of infectious disease, specifically, Methicillin-resistant Staphylococcus aureus, MRSA.

11-CV-4055-DEO, Docket No. 10. Both the Plaintiff and the Defendant filed a number of preliminary motions in that case. On September 28, 2012, this Court entered an Order granting in part and denying in part the Defendant's Motion for Summary Judgment and Motion to Dismiss. 11-CV-4055-DEO, Docket No. 48. The Court dismissed certain Defendant(s), but the Court denied the Defendants' Motion for Summary Judgment and allowed

the case to proceed against Defendant Mary Benson. The State appealed, and the 8th Circuit reversed this Court and stated the Court had used the wrong legal standard. Specifically, The 8th Circuit stated:

> [b]oth parties argued to the district court that the deliberate indifference standard from the Eighth Amendment should govern Scott's Fourteenth Amendment claim. Relying on a non-binding case, McDonald v. Eilers, Civ. No. 88-2751, 1988 WL 131360, at *2 (E.D. Pa. Dec. 7, 1988), the district court instead analyzed Scott's claim under the professional judgment standard from Youngberg v. Romeo, 457 U.S. 307 (1982).

Scott v. Benson, 742 F.3d 335, 339 (8th Cir. 2014), Docket No. 76. The 8th Circuit went on to say:

> where a patient's Fourteenth Amendment claim is for constitutionally deficient medical care, we apply the deliberate indifference standard from the Eighth Amendment. Senty-Haugen v. Goodno, 462 F.3d 876, 889-90 (8th Cir. 2006). Accordingly, the district court should have applied the deliberate indifference standard to Scott's claim.

Scott, 742 F.3d at 339.

Based on the 8th Circuit's ruling, the Court ordered additional briefing. On May 12, 2014, the Court again denied the State's Motion for Summary Judgment, this time applying

3

the deliberate indifference standard. 11-CV-4055-DEO, Docket No. 87. The case is currently scheduled for trial on June 29, 2015.

While the 'main issue' in case 11-CV-4055 was progressing through the Court, the parties filed a number of ancillary motions. On February 3, 2012, the Defendants' attorney, Gretchen Kraemer, filed an Emergency Motion. 11-CV-4055-DEO, Docket No. 16. Ms. Kraemer stated that Mr. Scott's potassium was dangerously low because of his diabetes. Ms. Kraemer requested authority to transport and treat Mr. Scott even though he was refusing treatment. <u>Id.</u> The Court granted the Defendants' Emergency Motion on the same day. 11-CV-4055-DEO, Docket No. 17.

On March 14, 2013, Ms. Kraemer filed another Emergency Motion stating that Mr. Scott was refusing treatment for an infection. Ms. Kraemer requested this Court allow the Defendants to treat Mr. Scott against his will. 11-CV-4055-DEO, Docket No. 58. On March 15, 2013, the Court conducted a hearing regarding the Defendants' Emergency Motion. During that hearing, the Court advised the parties of a letter written to the Court by Mr. Scott, in which Mr. Scott

4

argues that forced medication is a violation of his constitutional rights.  The Court entered an Order 11-CV-4055-DEO, Docket No. 64, authorizing the Defendants to transport Mr. Scott to a hospital and treat his infection. The Court also directed that Mr. Scott's letter be filed as a new lawsuit, which became captioned case 13-CV-4028-DEO. 13-CV-4028, Docket Nos. 1 and 7.

On April 3, 2013, the Court entered an Initial Review Order in 13-CV-4028.  13-CV-4028-DEO, Docket No. 6.  On September 5, 2013, the Court traveled to the CCUSO unit in Cherokee, Iowa, and conducted a hearing on the Motions for (Preliminary/Temporary) Injunctive Relief contained in the Amended Complaint and Counter Claim.  13-CV-4028, Docket Nos. 11 and 12.  On December 11, 2013, the Court entered an Order preserving the status quo.  13-CV-4028, Docket No. 38.  As anticipated by the Court, under the status quo arrangement, Mr. Scott would be able to refuse routine medical treatment, but the Defendants could file an emergency motion if a life threatening situation developed.  The Defendants could also treat Mr. Scott, even against his will, in the case of a highly communicable or contagious diseases.  <u>Id.</u>, p. 20-22.

5

The Court also allowed the Defendants to continue to provide Mr. Scott a medically appropriate diet. Id., p. 29-30. After deciding a number of other issues Mr. Scott had brought up during the hearing, the Court advised the parties that a settlement was likely the best outcome for Mr. Scott's case considering the case's unusual history. However, no settlement has been reached. Instead, the Defendant filed a Motion for Summary Judgment. 13-CV-4028-DEO, Docket No. 59. The Court held a hearing on that Motion on May 8, 2015 and a ruling is pending. 13-CV-4028-DEO is currently set for trial for June 29, 2015, to be heard consecutively with 11-CV-4055-DEO. The trials are set to take place in Cherokee, Iowa, at the CCUSO facility.

As Mr. Scott's two cases have progressed, the Court has addressed a number of other issues related to Mr. Scott. During the weekend of October 12, 2013, the Court received two phone calls from Mr. Scott complaining about a lesion on his hip and CCUSO's (alleged) failure to treat it. On Monday, October 14, 2013, the Court advised the parties of these ex-parte communications. See 13-CV-4028, Docket No. 31, Ex. 1. In response, the Defendants filed a Supplement on October

6

15, 2013. 13-CV-4028, Docket No. 31. On that same date, the Plaintiff filed a request for an Emergency Hearing/Order. 13-CV-4028, Docket No. 32. The Court conducted a telephonic hearing on the Emergency Motion on October 16, 2013. Following those hearings, the Court instructed that Mr. Scott should be evaluated at the Cherokee Hospital. See 13-CV-4028, Docket No. 38.

On February 10, 2014, Mr. Scott contacted the Court to say he did not have access to bathroom facilities. The Court contacted counsel and was advised that a handicapped bathroom at CCUSO had briefly been locked due to an issue with a different CCUSO patient, but that following that incident, the handicapped bathroom had been reopened. The Court determined that no additional action was needed at that time.

On March 20, 2014, Mr. Scott's counsel, Mr. Parry, informed the Court via email that Mr. Scott would like a hearing regarding the number of electrical outlets (plug-ins) in his room. The State objected to a hearing on that matter, and informed the Court Mr. Scott already had six outlets in his room. The Court denied Mr. Scott's request for a hearing, stating:

> [t]he Court is persuaded that the Defendants are correct. By his own

7

>     admission, Mr. Scott has six outlets. This
>     is not an issue upon which relief can be
>     granted. Accordingly, the Plaintiff's
>     request for a hearing is denied.

13-CV-4028, Docket No. 42, p. 2.

On April 15, 2014, Mr. Scott contacted the Court requesting an emergency hearing because he did not have access to an adequate shower chair. The Court contacted counsel and was advised that a new chair had been ordered for Mr. Scott. Based on that information, the Court determined that no additional action was needed at that time.

On October 28, 2014, the Court received an email from Pat Parry stating that Mr. Scott had a severe infection. The Court contacted CCUSO's counsel, Gretchen Kraemer, who stated that Mr. Scott was scheduled for evaluation treatment at the University of Iowa. After further consolation with the parties, the Court determined that no additional action was needed.

On January 5, 2015, Mr. Scott filed a request for a hearing regarding taking his own oxygen levels and using a different oxygen machine. See Docket No. 48. The Court held a hearing. Following the hearing, the Court entered an Order stating that Mr. Scott should use the oxygen machine he was

already using and could monitor his oxygen in the manner discussed during the hearing. The Court also stated:

> [a]s mentioned above, in the Court's previous Order in this case, the Court directed the parties to file emergency motions if a life threatening issue arose in relation to Mr. Scott. See Docket No. 38. However, absent a life threatening issue, the Court has little authority to consider novel issues in the above captioned case absent additional filings. Additionally, it is unfair to the appointed attorney to add issues to a progressing case without following the proper procedures for opening a new case. It is also unfair to other CCUSO patients who go through the steps of filing new lawsuits when new issues arise. Accordingly, the Court reminds the parties that they may file an emergency motion under the above captioned case if there are life threatening issues as set out in the Order on the Motion to Dismiss, Docket No. 38, filed December 11, 2013. However, if Mr. Scott wants to pursue new, unrelated legal actions, he needs to file new cases in the same manner as other CCUSO patients.

Docket No. 56, p. 16-17.

On March 27, 2015, the Court received a call from Mr. Scott saying that CCUSO confiscated food from his room while he was in the hospital. Mr. Scott demanded an immediate hearing with the Court. The Court denied Mr. Scott's request for a hearing and noted that the Court had, on several different occasions, already denied his legal claims regarding his diet. 13-CV-4028-DEO, Docket No. 63.

9

## II. STANDARD OF REVIEW

"Whether to grant or deny a motion for continuance is a decision within the sound discretion of the trial court, and its decision may not be set aside absent an abuse of that discretion." Kraus-Anderson Capital, Inc. v. Donohue, No. 4:14-CV-00937-NKL, 2015 WL 404361, at *5 (W.D. Mo. 2015) citing DiMercurio v. Malcom, 716 F.3d 1138, 1140 (8th Cir. 2013).

In regards to a Motion to Continue a summary judgment decision:

> "summary judgment is proper only after the nonmovant has had adequate time for discovery." In re TMJ Litigation, 113 F.3d 1484, 1490 (8th Cir. 1997). Federal Rule of Civil Procedure 56(f) allows a party opposing summary judgment to request the court postpone a decision until adequate discovery is completed. To obtain a Rule 56(f) continuance, the party opposing summary judgment must file an affidavit "affirmatively demonstrating ... how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." Humphreys v. Roche Biomedical Lab., Inc., 990 F.2d 1078, 1081 (8th Cir. 1993).

Ray v. Am. Airlines, Inc., 609 F.3d 917, 923 (8th Cir. 2010).

## III. ANALYSIS

Mr. Scott's cases have a long, complicated, and intertwined history. In short, Mr. Scott has alleged

deliberately indifferent medical care while at CCUSO (11-CV-4055-DEO) and has also alleged that the Defendants have unconstitutionally interfered with his medical decisions (13-CV-4028-DEO). Both sides have requested emergency hearings to address a variety of issues sometimes directly related to the cases, sometimes not.

In the present Motion, the Plaintiff states that:

> [o]n June 1, 2015, a potential witness and current employee of the Iowa Civil Commitment Unit for Sex Offenders (CCUSO) made contact with the undersigned attorney. The witness indicated that he was in possession of a great deal of information relating to the instant case that contradicted the position of CCUSO defendants(s). This witness was reluctant to share said information unless it was as part of a deposition and further was requesting anonymity until the time of said deposition. The attorney for the defendant(s) and court staff were informed of said information on June 1, 2015, and a status hearing was conducted by court staff on June 2, 2015. Although the exact nature of the information is yet unknown, it would serve the interest of justice to continue the trial approximately 90-120 days and allow additional discovery by deposing this witness and any (sic) allow any further necessary discovery related to the deposition in the next 60 days.

13-CV-4028-DEO, Docket No. 71, p. 1-2.

Mr. Scott's two cases are scheduled for a combined trial date at the end of this month.[1] The Defendants resist the Plaintiff's request to continue the trial and hold open the pending Motion for Summary Judgment in 13-CV-4028-DEO. In their Resistance, the Defendants argue that 1) these cases have been on the docket for quite some time; 2) these 'new' witnesses were previously discoverable; and 3) the 'new' witness(es) are not direct medical provider(s) so the new information is, at best, tangentially related to the issues set for trial.

This is an unusual situation. Although surprise witnesses are common in fiction related to the practice of law, they are relatively uncommon in real life. Accordingly, there is no universal way of handling this development. The Defendants argue that the new witness(es) are not direct healthcare providers so their information is likely of minimal value. However, the identity of and information from the new witness(es) is not presently before the Court. Assuming for the sake of argument that the new witnesses are not direct health care providers, the Court notes that the entire CCUSO

---

[1] After consulting with the Court, and with the Court's acquiescence, the parties determined that holding the trial at the CCUSO facility in Cherokee, Iowa, would be in the best interest of Mr. Scott's deteriorating health.

facility is in the business of treating mental health issues. Many of CCUSO patients also have underlying physical health issues. Thus, it is easy to contemplate a situation where witnesses who are not direct providers may still have relevant medical information. Additionally, although it is possible that these witnesses were previously discoverable, it is also possible that their willingness to testify is new. As was set out above, motions to continue are within the discretion of the Court. There is no doubt that a new 'whistle-blower' type witness will complicate these cases. Both sides are left to deal with the 'surprise' and must assess the new information and adjust their trial strategies. If there is new information helpful to the Plaintiff, he needs time to investigate it. If the Plaintiff believes new information is relevant, the Defendants may well need to move to exclude it. Although waiting for trial to explore this new evidence may be more exciting, it is not in the best interest of anyone. Accordingly, the Court is persuaded that the interest of justice requires that the trial be continued.

The Court further notes that there is little potential harm to either side by continuing the currently scheduled trials. Both the Plaintiff and the Defendants have petitioned the Court in emergencies in the past, and are free to do so in

the future, if a <u>life threatening situation develops</u>.  In the interim, the best practice is to allow the parties to develop the record and explore the information provided by the new witnesses.

For the same reasons, the Court will open discovery in 13-CV-4028-DEO and extend the deadline for amending the dispositive motion(s) and the responce(s).  This additional time is necessary to allow the non-moving Plaintiff an opportunity to explore the surprise cooperating witness.  The risk of prejudice to either party seems very small, especially in light of the fact that the hearing on the original Motion for Summary Judgment was held only a few weeks ago.

The parties will have 60 days from the date of this Order to conduct additional discovery.  Amendments to the currently pending Motion for Summary Judgment, 13-CV-4028-DEO, Docket No. 59, will be due two weeks later, and supplements to the Resistence, 13-CV-4028-DEO, Docket No. 64, will be due two weeks after that.

## IV. CONCLUSION

The Plaintiff's Motions to Continue (See 11-CV-4055-DEO, Docket No. 97 and 13-CV-4028-DEO, Docket No. 71) are **GRANTED.**

**<u>The parties are directed to confer with Magistrate Judge Strand's chambers and agree on a new trial date between 120</u>**

**and 150 days from the date of this Order**.  The Magistrate Judge will then file an Amended Trial Management Order setting out the new deadlines discussed above.

   **IT IS SO ORDERED** this 9th day of June, 2015

*Donald E. O'Brien*
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa